IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 30, 2001 Session

## JAMES ROGER NELSON v. VICTORIA KAY GOAD NELSON

**Appeal from the Chancery Court for Morgan County**
**No. 00-129     Michael A. Davis, Judge, by Designation and by Interchange**

**FILED OCTOBER 23, 2001**

**No. E2000-02873-COA-R3-CV**

James Roger Nelson ("Husband") filed a Complaint for Absolute Divorce ("Complaint") against Victoria Kay Goad Nelson ("Wife"). Wife filed an Answer and a Counter-Complaint for divorce. Wife admitted to Husband she had been and still was involved in an extramarital affair with a co-worker. Before trial, Husband obtained a temporary restraining order against Wife, and Wife obtained an Order of Protection against Husband. Wife testified Husband had subjected her to verbal and physical abuse in front of their minor children. Wife also testified Husband had threatened her with a gun while their children were at home with them. The Trial Court granted both parties a divorce, divided the parties' property, and awarded custody of the children to Husband. The Trial Court based its custody decision upon Wife's extramarital affair and the fact that Husband, at the time of trial, had the more stable home environment. The Trial Court failed, however, to address Wife's allegations that she was abused by Husband. Wife appeals the custody award and portions of the Trial Court's property division. We vacate, in part, and affirm, in part, and remand.

**Tenn. R. App. P. 3; Judgment of the Chancery Court Vacated, in part,
and Affirmed, in part; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Joe R. Judkins, Wartburg, Tennessee, for the Appellant, Victoria Kay Goad Nelson.

James W. Brooks, Jr., Wartburg, Tennessee, for the Appellee, James Roger Nelson.

# OPINION

## Background

Husband and Wife, both age twenty-seven, were married nearly six years and have two young children ("Children"), whose ages were approximately six and four at the time of trial. In July 2000, Husband filed a Complaint for Absolute Divorce in which he alleged the divorce grounds of adultery, inappropriate marital conduct, and irreconcilable differences. In his Complaint, Husband sought a temporary restraining order to limit Wife's contact with him and their Children. The Trial Court granted Husband's request for a temporary restraining order. Wife filed an Answer and a Counter-Complaint for divorce on the grounds of inappropriate marital conduct and irreconcilable differences. Wife obtained an *ex parte* Order of Protection after being served with Husband's Complaint.

Husband and Wife lived during their marriage in a mobile home located less than one mile from the homes of Husband's parents and grandparents. The Children have lived at this address their entire lives. The proof in the record shows that prior to the parties' separation in July 2000, Wife primarily cared for the Children, while Husband had minimal childcare responsibilities. Husband testified Wife was a good mother before she became employed outside the home in 1999. In Husband's opinion, when Wife took an outside job, she was not at home to care for the Children "like she should have been." Once Wife began her job in 1999, Husband's parents and grandparents participated in the care and babysitting of the Children.

After the parties separated in July 2000, Wife moved out of the parties' home, moved twice, and by the time of trial, was living in a duplex in a nearby town. Wife testified her duplex had a yard for the Children to use for playing but that none of their toys were at her house. Wife asked Husband for some of the Children's toys. Husband refused this request. By contrast, the parties' mobile home is located on a large lot where the Children have a trampoline and swing set. Wife also testified that, after the parties' separation, she experienced difficulty in obtaining Husband's cooperation with her visitation. Moreover, Wife testified Husband attempted to use the Children as a bargaining tool with Wife. Wife testified Husband offered to return the Children to her if Wife agreed to have sex with him. Wife also testified Husband agreed that Wife could have custody of the Children if she changed her work schedule from second to first shift. Wife agreed to this last offer and, a week before trial, changed her work schedule.

Husband is self-employed as a trucker and a logger. The parties jointly ran the operation as Wife took care of the business' bookkeeping and record keeping. The proof in the record shows the parties purchased a Peterbilt tractor for Husband and rented the trailer from Husband's father to use in this business. Husband sometimes worked more than seventy hours per week, but by trial, Husband had reduced his work hours to between forty and fifty hours per week so he could care for the Children. Husband testified his work schedule varied since sometimes he has to leave for work at 5 a.m., while at other times, he does not leave until 9 a.m. Wife testified,

however, that Husband had not actually reduced his hours. Wife recently had contacted Husband on his mobile phone late at night, and Husband was still working. Wife testified that since the parties' separation, Husband's parents were the ones really keeping the Children due to Husband's work schedule.

Wife is employed in a manufacturing facility in nearby Oak Ridge, Tennessee. Wife began to work outside the home in 1999 because, according to Wife, the parties were having difficulty paying their bills. Initially, Wife worked the second shift. Wife testified she worked evenings because Husband and his family wanted her to be with the Children during the day. A few days before trial, Wife changed her schedule to work the first shift, 7:30 a.m. until 4:30 p.m. Wife testified she had made arrangements for a baby-sitter for the times the Children are not in preschool and school.

The record shows that Husband reported to the Trial Court that his average net monthly income was $840 per month.[1] At trial, Husband admitted he did not earn enough money to meet his minimum monthly bills. In contrast, Wife testified her average net monthly income was $1,400 per month. Wife carries health and dental insurance for the Children through her employment.

Wife did not deny at trial that she was involved in an extramarital affair with one of her co-workers, Daniel Ledbetter. Ledbetter also was married with children. Prior to filing his Complaint, Husband discovered a check Wife had written for a hotel room charge and confronted her with it. Wife telephoned Ledbetter while the parties were on vacation with the Children in July 2000. Husband testified he sought a temporary restraining order in his Complaint because of his concerns about the Children being around Wife's paramour. The proof in the record shows that Ledbetter had been around the Children on one occasion at a movie theater, a meeting which Wife testified was unplanned. Wife testified Ledbetter stayed with her at least two nights a week. Wife testified she knew her affair with Ledbetter affected the Children and that the Children would not be around Ledbetter, at least for awhile.

In addition, the parties frequently disagreed about their finances. Wife testified Husband was extremely stingy and unreasonable about spending money for the Children's health care, for their and the Children's clothing, and for their home. Wife testified that because of the cost involved, Husband questioned the reasons for sending their then-three-year old Child to the dentist for two cavities. Husband, however, testified Wife had no concept of money and that her spending was out of control. The proof in the record shows Wife admitted she had not been honest with Husband regarding her spending and their finances. Wife, without telling Husband, used a check to withdraw $500 from their trucking business' checking account. Wife testified she did so because the parties were having difficulty meeting their household expenses since Husband failed to deposit enough of his earnings into their joint account. Wife testified Husband deposited the bulk of his

---

[1] Wife testified, however, that before trial, Husband told her he would hide his true income from her and her attorney.

earnings into the trucking business' account. In addition, Wife obtained three credit cards in Husband's name without his authorization. Wife also traded a vehicle titled in Husband's name for another vehicle without Husband's agreement. Wife apparently signed Husband's name on the title without his authorization. Wife testified she was not forthcoming with Husband about these matters because she was afraid of his reaction.

The parties' relationship was tumultuous, especially once Husband discovered Wife's affair with Ledbetter. Wife testified that before and during their marriage, Husband was quick-tempered and had abused her both verbally and physically. Wife testified Husband went into fits of rage several times per week during their marriage. Husband berated Wife about her weight and her family. Wife recounted incidents in which Husband kicked, hit, and pulled her hair in front of the Children. Wife also testified Husband pointed a gun in her face and stated he would kill her before he would allow her to leave him. This alleged incident occurred at 4:00 a.m. when the Children were home. In addition, Wife testified that in July 2000, Husband took Wife's car keys from her so she could not leave their home. Husband also caused a disturbance at her place of employment. Husband did not deny taking Wife's car keys and claimed he went to her workplace so he could talk Wife into coming home to their family. Husband denied threatening to kill Wife, but testified Wife threatened to burn down their mobile home. Wife admitted making this threat, but testified she did so only because Husband had taken her Children away from her with the temporary restraining order.

Husband had been given some land by his grandparents a few months prior to the parties' marriage. The parties' mobile home was on this property. Water, utility and septic service were installed on Husband's real property before the parties were married. A porch for their mobile home was constructed after the parties married.

The Trial Court heard testimony in September 2000, and entered a Final Decree the following month. In its Final Decree, the Trial Court granted both parties a divorce; awarded custody of the Children to Husband with visitation to Wife; and ordered Wife to pay approximately $460 per month in child support and to maintain health and dental insurance for the benefit of the Children. The Trial Court found that the real property was not marital property because Husband obtained the lot and made improvements to the property, such as the installation of water, utility and septic service, prior to the parties' marriage.

The Trial Court made very few findings of fact from the bench and incorporated them by reference into the Final Decree. The Trial Court held that its decision to grant custody of the Children to Husband was based upon (1) Wife's "inappropriate relationship" with Ledbetter; and (2) Husband having the more "stable home at this point in time" as the Children's home, toys and extended family were there. Wife appeals.[2]

_____

[2] For simplicity's sake, we use round dollar numbers in this opinion.

**Discussion**

On appeal and although not stated exactly as such, Wife raises the following issues: 1) the Trial Court erred in granting custody of the Children to Husband instead of Wife; 2) if this Court reverses the Trial Court's decision to grant custody to Husband, Husband should be ordered to provide medical insurance for the benefit of the Children; and 3) the Trial Court erred in its division of property. Husband raises no further issues on appeal.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the Trial Court, unless the preponderance of the evidence is otherwise. Tenn. Rule App. P. 13(d); *Alexander v. Inman,* 974 S.W.2d 689, 692 (Tenn. 1998). A Trial Court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn. 1997).

Since the custody of the Children is the predominant issue in this appeal, we will address it first. In child custody determinations, courts "should promote children's best interests by placing them in an environment that will best serve their physical and emotional needs." *Gaskill v. Gaskill*, 936 S.W. 2d 626, 630 (Tenn. Ct. App. 1996). A number of factors are to be considered by the court in determining child custody, and these factors are outlined in Tenn. Code Ann. § 36-6-106(a), in pertinent part, as follows:

> (1) The love, affection and emotional ties existing between the parents and child;
>
> (2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary care giver;
>
> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment . . .;
>
> (4) The stability of the family unit of the parents;
>
> (5) The mental and physical health of the parents;
>
> (6) The home, school and community record of the child;
>
> \* \* \* \* \* \*
>
> (8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. . . . The court shall include in its decision a written finding of all evidence, and all findings of facts connected thereto . . . .

-5-

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

Trial courts have broad discretion in making custody determinations, but courts still must apply the applicable principles of law. *Gaskill v. Gaskill*, 936 S.W.2d at 631. In deciding custody matters, trial courts take into account a number of factors, "including the parents' demeanor and credibility during the divorce proceedings themselves." *Id.* Accordingly, this Court is "reluctant to second-guess a trial court's decisions" regarding child custody. *Id.*

When both parents seek custody, "[c]ourts customarily devise initial custody and visitation arrangements by engaging in a 'comparative fitness' analysis which requires them to determine which of the available custodians is comparatively more fit than the other." *Id.* at 630. Accordingly, courts should not focus only on one parent's fitness since both parents' fitness should be compared and considered. *Id.* at 631.

In this matter, the Trial Court gave two findings of fact as the basis for its determination that custody of the Children should be awarded to Husband: (1) Wife's adulterous relationship; and (2) Husband had, at the time of trial, the more stable home environment. Wife contends on appeal, among other things, that the Trial Court erred in awarding custody of the Children to Husband because the proof in the record shows Husband had committed violent acts against her during the marriage, at least some of which were witnessed by the Children. Wife also argues that the Trial Court erroneously based its custody decision upon Wife's extramarital affair with Ledbetter. Wife points out that when Husband was asked why he wanted custody of the Children, he testified only that it was because of Wife's affair.

We agree with Wife that her adulterous relationship cannot be the only basis for the Trial Court's decision regarding custody of the Children. A "parent's sexual infidelity or indiscretion does not, *ipso facto* disqualify that parent from receiving custody of his/her children." *Varley v. Varley*, 934 S.W.2d 659, 666-67, (Tenn. Ct. App. 1996). "When the activities of the parent involve neglect of the children, however, such neglect is a consideration in determining the children's best interests." *Id.* In addition, under a number of the statutory factors outlined in Tenn. Code Ann. § 36-6-106(a), a trial court may consider the effect of a parent's extramarital affair on the Children and on the parent's fitness as a custodian.

According to its factual findings, the Trial Court, however, also considered the home environment that Husband could provide the Children to be more stable than the home Wife could

provide. The evidence contained in the record on appeal does not preponderate against this factual finding. *See* Tenn. Rule App. P. 13(d); *Alexander v. Inman,* 974 S.W.2d at 692.

Nevertheless, due to the Trial Court's failure to make any specific findings of fact regarding Wife's allegations of abuse by Husband, we vacate the custody portion of the Trial Court's Final Decree. Much of the trial testimony dealt with Wife's claim of Husband's abuse. For some reason, however, the Trial Court never addressed this issue.

Tenn. Code Ann. § 36-6-106(a)(8) specifically lists as one of the factors that the Trial Court "shall consider . . ." in making its custody determination is "[e]vidence of physical or emotional abuse . . . to the other parent . . . ." This subsection also mandates that "[t]he court shall include in its decision a written finding of all evidence, and all findings of fact connected thereto." *Id*. Wife made allegations and presented proof of Husband's physical and emotional abuse of her. Much of the trial was related to this issue. The Trial Court made no "written finding of all evidence, and all findings of facts . . ." related to Wife's allegations and proof of physical and emotional abuse of her by Husband. This portion of the statute is mandatory and provides that the Trial Court "shall" make this written finding of evidence and findings of fact concerning the allegations and proof of abuse presented to the Trial Court.

Husband's abuse of Wife, if any, and particularly any abuse in the presence of the Children, weighs heavily in this custody determination as such abuse is relevant to the court's comparison of the parties' fitness as parents. The implications of such abuse, if true, are far-reaching with respect to the relationship that Husband has with the Children's mother, Wife, and the relationship that Husband has and will have with the Children. Since this Court did not have the benefit of observing the parties' manner and demeanor during their testimony at trial, this Court is not in a position to determine which party is more credible on this disputed, yet critical, issue. *See Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d 498, 502 (Tenn. Ct. App. 2000). Accordingly, we vacate the permanent custody portion of the Trial Court's Final Decree and remand this matter to the Trial Court to make a written finding of all evidence and specific findings of fact regarding Wife's allegations of abuse by Husband, particularly the allegations of abuse occurring in the presence of the Children. Having considered all relevant factors, we hold that if the Trial Court on remand finds that Wife carried her burden and established that Husband is guilty of this abuse, then custody of the Children shall be granted to Wife as being in the best interests of the Children. If the Trial Court finds that Wife failed to carry her burden regarding this issue, custody of the Children shall be with Husband as determined by the Trial Court in its original Final Decree.

We now turn to Wife's argument on appeal that the Trial Court erred in its property division. We note that Wife, on appeal, failed to comply with Ct. App. Tenn. R. 15 which requires, in matters involving the "amount or the disposition of the marital property," the appellant to include in her brief "an orderly tabulation of all marital property in a form substantially like the form attached [to Rule 15]." Despite Wife's non-compliance with Rule 15, we will address, as best we can, Wife's issues on appeal regarding the Trial Court's disposition of the parties' property.

First, Wife contends that the Trial Court erred in holding that the real property was Husband's separate property, and, therefore, that Wife was not entitled to any of the real property. Wife argues that improvements were made to the property after the parties were married and that, therefore, the property is marital property. Wife points to her testimony that the parties made improvements on the property after they were married, including the addition of two storage buildings, a porch, underpinnings and the cleaning and maintenance of the yard.[3] Wife also contends these post-marriage improvements to the real property increased its value by $2,000 and points out that her opinion was undisputed at trial.

The terms "marital property" and "separate property" are defined in Tenn. Code Ann. § 36-4-121. Separate property is defined, in pertinent part, as "[a]ll real and personal property owned by a spouse before marriage." Tenn. Code Ann. § 36-4-121(b)(2)(A). Marital property is defined in a number of ways by Tenn. Code Ann. § 36-4-121(b)(1), which include, in pertinent part:

> (A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing
> . . . .
>
> (B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation . . . .

The term "substantial contribution" is defined by this statute as that which:

> may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.

Tenn. Code Ann. § 36-4-121(1)(D).

In determining that the real property was not marital property, the Trial Court found that the real property was received by Husband prior to the parties' marriage and that the significant improvements made to the property also were made prior to their marriage. We hold that the proof contained in the record does not preponderate against these findings. *See* Tenn. R. App. P. 13(d); *Alexander v. Inman*, 974 S.W.2d at 692.

---

[3] The proof in the record on appeal shows that the real property was pastureland prior to the time that Husband obtained the land and placed the first mobile home on it in 1994, before the parties were married.

We note that the only proof in the record that the improvements made after the parties were married increased the value of the property is Wife's opinion that its value increased by $2,000. The Trial Court apparently did not find Wife's testimony regarding the alleged increase in the property's value to be credible. The Trial Court's determinations regarding credibility are accorded deference by this Court. *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d at 502; *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 563 (Tenn. 2001). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). Because the evidence does not preponderate against the Trial Court's findings and because of the deference we must give the Trial Court's assessments of credibility, we affirm the Trial Court's determination that the real property was Husband's separate property.

Wife next contends on appeal that the Trial Court erred in awarding the Peterbilt tractor to Husband.[4] Without citing any authority, Wife argues that the Trial Court should have ordered the tractor to be sold and the proceeds equally divided between the parties. Wife contends, without citing the record on appeal, that the tractor should be sold because of the variance of the parties' opinion as to the value of the vehicle and Wife's unrefuted testimony that Husband told her that he would prevent her from "receiving what she would be entitled to" in the divorce. Wife does not contend, however, that the Trial Court's overall division of property was not equitable.

"In making equitable division of marital property, the [Trial Court] shall consider all relevant factors including" the following:

> (2)     The . . . vocational skills, employability, earning capacity . . . of each of the parties . . .;
>
> (8)     The economic circumstances of each party at the time the division of property is to become effective . . .; [and]
>
> (11)   Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c).

The Trial Court did order Husband to pay Wife her share, or one-half, of the parties' equity in the tractor. In addition, the proof contained in the record establishes that Husband uses the tractor in his job as a trucker and logger. Given Husband's vocation and employability, the parties'

---

[4] Wife incorrectly argues that the Trial Court never made a specific determination regarding the award of the Peterbilt tractor. The Trial Court, in its Final Decree, awarded the tractor to Husband. In addition, on appeal, Wife discusses both the Peterbilt tractor *and* trailer as the parties' property. The record on appeal shows, however, that the parties owned only the Peterbilt tractor and that Husband leased the trailer from his father.

economic circumstances, and the equities between the parties, we find no error in the award of the Peterbilt tractor to Husband. *See* Tenn. Code Ann. §§ 36-4-121(c)(2), (8) & (11).

Wife's remaining argument on appeal concerns the Trial Court's award of various other personal property items to Husband. We find this issue to be without merit.

## **CONCLUSION**

The portion of the Trial Court's Final Decree regarding permanent custody of the parties' Children, medical insurance for the Children, and child support is vacated and remanded to the Trial Court for further proceedings consistent with this Opinion. The remainder of the Trial Court's Final Decree is affirmed. However, pending a determination of custody and related issues on remand, the Children will remain in the now temporary custody of Father as ordered by the Trial Court in its Final Decree. Additionally, all child support, including medical insurance and responsibility for medical and dental expenses not covered by medical insurance, and visitation as ordered by the Trial Court in its Final Decree shall remain in effect on a temporary basis until a determination on remand by the Trial Court of custody and related issues. This cause is remanded to the Trial Court for further proceedings as required, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed equally against the Appellant, Victoria Kay Goad Nelson, and her surety, and the Appellee, James Roger Nelson.

_____
D. MICHAEL SWINEY, JUDGE